Harold HAALAND, J. W. Mueller, Otis K. Schlak, Herbert Adam, Henry Severson, Marion Swanson, Gretha Hooke, Richard Pederson, Marion Rearick, B. K. Holum, Emil Sitz, and John Dethloff and Kyle Miller, Plaintiffs and Respondents,

v.

VERENDRYE ELECTRIC COOPERATIVE, a corporation, "Rusty" Melford Hanson, as its Manager, Lawrence Erickson, Glenn Pace, Leon Birdsall, Nels Solheim, Axel Kongslie, Frank Bruner, Leonard Smestad, Leslie M. Pederson and Myron Shook, acting Directors of said Corporation, Defendants and Appellants.

No. 7483.

Supreme Court of North Dakota.

March 14, 1955.

April 18, 1955.

Ilvedson, Pringle & Herigstad, Minot, and Heringer, Nelson & McClintock, Rugby, for defendants and appellants.

Waldron & Kenner, Minot, for plaintiffs and respondents.

MORRIS, Judge.

This is an appeal from a judgment rendered in a proceeding brought under the provisions of Section 10–0518, NDRC 1943 challenging the declared election of nine directors of the Verendrye Electric Cooperative, a corporation, at the annual meeting of the corporation on June 3, 1954. The trial court held the election to be null and void ab initio and ordered the declared elected directors to be ousted from office. He also determined that certain other persons had been elected directors at the annual meeting.

Those persons declared to be chosen as directors by the election officials at the annual meeting and who are defendants in

this proceeding are: Leon Birdsall, Lawrence Erickson, Glenn Pace, Nels Solheim, Axel Kongslie, Frank Bruner, Leonard Smestad, Leslie M. Pederson, and Myron Shook. They will hereafter be referred to as the Birdsall group.

Those persons declared to be elected by the district court are: Harold Haaland, Edward Hammer, Emil Sitz, Otis Schlak, Theodore Polsfut, W. R. Varberg, J. W. Mueller, Kyle Miller, and Herbert Adam. They will hereafter be referred to as the Haaland group.

At the annual meeting there were 1003 members present and registered. Of these a substantial majority cast their votes in behalf of the Birdsall group. The Haaland group had obtained and offered to vote 370 proxies. If these proxies had been recognized and the votes represented thereby had been counted for the Haaland group, that group of directors would have been elected. The election officials refused to permit the proxies to be voted and declared the Birdsall group to be elected. Thus the first question for determination is whether the holders of proxies were entitled to vote them at the annual meeting.

■ The "Verendrye Electric Cooperative, Inc." was incorporated January 26, 1939, pursuant to the provisions of Chapter 115, SLND 1937, designated as the "Electric Cooperative Corporation Act." It provided:

"This Act is complete in itself and shall be controlling. The provisions of any other law of this State, except as provided in this Act, shall not apply to a corporation organized under this Act." § 36.

It, together with subsequent amendments, is now Chapter 10–13, NDRC 1943. The last section of that chapter, 10–1340, states that:

"No provision of this title not contained in this chapter shall apply to corporations organized under this chapter except as provided herein."

It is the plainly declared intention of the legislature that this law is exclusive and that the general provisions of the corporation law of this state do not apply to electric cooperative corporations unless it is so provided in the electric cooperative corporation act and amendments thereto.

■ The plaintiffs argue that regardless of its original provisions the electric cooperative corporation act, Chapter 10–13, NDRC 1943, is no longer exclusive because Chapter 10–15, NDRC 1943 is now applicable to corporations organized under the electric cooperative corporation act and that under Chapter 10–15, which is a general law providing for the organization and operation of cooperative associations or corporations, the power to adopt or amend by-laws is vested in the stockholders acting at an annual or special meeting by the provisions of Section 10–1508, NDRC 1943. The argument is based upon the fact that Section 10–1502, NDRC 1943, setting forth the purposes for which cooperative associations may be organized under the general law, was amended by Chapter 152, SLND 1945 to include among the purposes for which such an association might be formed "electric transmission and distribution." Thus it is contended that by the amendment, the power to adopt or amend the by-laws of the Verendrye Electric Cooperative, Inc. was vested in the members to the exclusion of the board of directors. This contention is without merit. The amendment contained in Chapter 152, SLND 1945 in no way amended the electric cooperative corporation act contained in Chapter 10–13, NDRC 1943, but only permitted cooperative associations to be formed under Chapter 10–15, for the purpose of electric transmission and distribution. The amendment did not purport to alter the provisions of Chapter 10–13 which, as we have pointed out, is made exclusive by its own terms.

■ Now we examine Chapter 10–13 to ascertain what it provides with reference to voting by the members of the corporation. Section 10–1317 states:

"Each member present shall be entitled to only one vote on each matter submitted to a vote at a meeting of the members of the corporation, but voting by proxy or by mail may be provided for in the by-laws."

This is the identical language used in Section 15, Chapter 115, SLND 1937. Section 10-1313, provides:

"The power to make, alter, amend, or repeal the by-laws of the corporation shall be vested in the board of directors unless, by the articles of incorporation, such power is reserved to the members of the corporation."

The articles of incorporation of the Verendrye Electric Cooperative do not reserve to the members the power to make, alter, amend, or repeal by-laws of the corporation. This power is therefore vested in the board of directors under the statute. Despite these provisions the respondents herein contend that proxy voting is provided by statute and that the board of directors may not adopt a by-law providing otherwise. They rely on Section 10-1316, NDRC 1943 which says:

"Unless otherwise provided in the articles of incorporation or in the by-laws, a majority of the members present in person or represented by proxy shall constitute a quorum for the transaction of business at a meeting of members, but if voting by mail is provided for in the by-laws, members so voting shall be counted as if present."

The contention of the respondents is based upon a misconstruction of this statute. It must be read in conjunction with Section 10-1317 which permits voting by proxy when provided for in the by-laws. When the by-laws do not so provide, voting by proxy is not permitted.

Section 10-1316 deals exclusively with the constitution of a quorum. The quorum under that section depends upon the manner of voting. Members present in person shall be counted. Persons represented by proxy shall be counted in determining the quorum if proxy voting is permitted under the by-laws. Likewise, if voting by mail has been provided for by the by-laws, those members voting by mail shall be counted as if present. Section 10-1316 does not provide a statutory authorization for voting by proxy or by mail. Such authorization must be provided for in the by-laws pursuant to Section 10-1317 and, if the by-laws so provide, proxy representation or votes by mail shall be counted in determining the quorum.

It may also be noted that the general residuary powers of the corporation are vested in the board of directors by this statutory provision:

"The board of directors shall exercise all of the powers of the corporation except such as are conferred upon the members by this chapter or by the articles of incorporation or by-laws of the corporation." Section 10-1319, NDRC 1943.

The respondents also contend that proxy voting is authorized by the articles of incorporation since Article VIII, Section 2, provides:

"In case the total number of members shall exceed one thousand (1,000) then at least one hundred fifty (150) of the members present in person or represented by proxy shall constitute a quorum for the transaction of business at all meetings of the members."

The same construction applies to this provision of the articles of incorporation that applies to the statutes above discussed. Members cannot be represented by proxy unless proxy voting is authorized by the by-laws. That provision does not authorize proxy voting, but in effect provides that where proxy voting has been authorized by the by-laws, members present by proxy as well as those present in person shall be counted in determining the quorum.

We now turn to the by-laws to determine whether they authorized proxy voting at the annual meeting on June 3, 1954. Article II, Section 6 of the original by-laws authorized proxy voting at the meet-

ings of the members of the corporation with certain limitations and restrictions that are of no concern to us here.

Article XIV of the by-laws provides:

"These by-laws may be altered, amended or repealed by the affirmative vote of not less than two-thirds (⅔) of the board of directors at any regular or special meeting, provided the notice of such meeting shall have contained a copy of the proposed alteration, amendment or repeal."

Article IV, Section 2, authorizes the calling of special meetings of the board of directors by the president or any three directors. Section 3 requires that notice of the time, place, and purpose of any special meeting of the board of directors shall be given at least five days previous thereto by written notice delivered personally or by mail. It also provides that the attendance of a director shall constitute a waiver of notice of the meeting unless he attends for the express purpose of objecting to the transaction of business.

On April 9, 1954, the president, Leon Birdsall, called a special meeting of the board of directors, the notice whereof recited that the special meeting would be held Monday, April 19, 1954, at 10:00 a.m. in the offices of the Verendrye Electric Cooperative, Inc. at Velva and further recited that:

"Notice is further given that an amendment to the By-laws will be proposed and voted upon at this meeting, which amendment is as follows:

" 'Article II, Section 6. At all meetings of members, proxies shall not be permitted. The presence of each member is desired at all meetings of the membership and proxy voting has the tendency to discourage actual attendance at membership meetings.'

" 'That the above amendment will amend Article II, Section 6, or any provision in the By-laws, contrary to the above.' "

The record shows that each member of the board of directors received this notice.

The minutes of the special meeting of April 19, 1954, show that all directors were present and that:

"It was moved by Shook and seconded by Smestad that Section 6 of Article II of the by-laws be amended to read as follows:

"Section 6 (Article II). At all meetings of members, proxies shall not be permitted. The presence of each member is desired at all meetings of the membership and proxy voting has the tendency to discourage actual attendance at membership meetings.

"And that any and all provisions in the by-laws contrary to this amendment are repealed. Unanimously carried."

It is clear that the above amendment was properly noticed, proposed, voted upon, and carried at a special meeting of the board of directors in accordance with the provisions of the by-laws and at once became in full force and effect.

The plaintiffs further contend that the election was "unfairly" conducted for these reasons: 1. The membership was not properly advised of the change in by-laws abolishing proxy voting. 2. The official ballots used at the election were unfairly prepared. 3. The order of business prescribed by Article II, Section 7, was not followed in the conduct of the annual meeting. 4. The balloting was unfairly conducted by the officials in charge of the election.

Notice of the annual meeting to be held on June 3 was mailed to each member by the secretary of the Verendrye Electric Cooperative, Inc. on May 21, 1954. It advised the membership of the time and place of the meeting and the names of candidates for the office of director submitted by the nominating committee that had previously been appointed and also the names of those candidates submitted by petition. Following the lists of candidates, appeared this statement:

"Please note that proxy voting has been eliminated by a change in the By-laws; your attendance in person is desired."

On May 17, 1954, a printed publication of the corporation known as a "newsletter" was mailed to each member. On the first page was a statement of the time and place of holding the annual meeting. On the third page appeared this headline: "Amendment to the By-laws Regarding Proxy Voting." Beneath the headline it was stated: "At a meeting of the board of directors held on April 19, 1954 a resolution was made and passed in regards to proxy voting as follows: * * *." Then appears the amendment to the by-laws in full as we have quoted it above. Thus it appears that the entire membership was notified by the official notice that proxy voting would not be permitted at the annual election and was also advised by the newsletter of the text of the amendment by which proxy voting was abolished.

The committee in charge of the election prepared an official ballot. The plaintiffs claim that this ballot was unfair to them because the candidates of the Haaland group were mostly listed farther down on the ballot than the Birdsall group. Candidates listed on the top half were grouped under the heading "Names submitted by the Nominating Committee." There were eleven names submitted by the nominating committee, eight being of the Birdsall group, one of the Haaland group, and two that apparently had no factional affiliation. Blank lines were provided for writing in the names of candidates not listed. On the bottom half of the ballot were "Names submitted by Petition." There nine candidates were listed, one being from the Birdsall group and the other eight from the Haaland group. After each name and blank line was a square in which the voter could designate his choice. The campaigning between the two groups was spirited. Each distributed lists or guide cards containing the names of the directors supported by the respective factions.

It is obvious from a study of the results of the election that the position on the ballot had little to do with the number of votes the candidates received. The votes received by the Birdsall group ranged from 518 to 586. The high vote was received by the Birdsall group candidate whose name was listed among those submitted by petition and was the fourth name from the bottom of the page. The votes received by the Haaland group ranged from 262 to 390. The name of the low candidate in this group was among those submitted by the nominating committee and its position was third from the top of the page. The plaintiffs have wholly failed to demonstrate that they suffered any serious disadvantage because of the arrangement of names on the ballot.

The plaintiffs complain that the president, Mr. Birdsall, departed from the order of business prescribed by the by-laws by permitting speeches to be made that were "slanted" in favor of the Birdsall group prior to the balloting. Some speeches were made but there is nothing in the evidence to indicate that they were partisan or controversial. The only implication that they were "slanted" comes from the questions of plaintiffs' counsel. The record does not show that these incidents interfered in any way with a fair election.

Plaintiffs also contend that the length of time consumed in balloting in some way militated against a fair expression on the part of the voting members. Balloting began about 9:30 a. m. and lasted until about 4:30 p. m. The committee in charge required the prospective voters to register and checked their membership before permitting them to vote. There is no evidence of any specific person who did not have an opportunity to vote, although one witness states that some members went home without voting. Three tables were set up for registration and prospective voters were registered three at a time. Sometimes there was a lull in the registration. If any implication is to be drawn from the length of time that the polls were open, it would seem to be in favor of a fair election and a free expression of the will of the members in attendance.

The lowest candidate of the Birdsall faction received 128 more votes than

the highest candidate of the Haaland group. It does not appear that any incident or incidents of which the plaintiffs complain militated against them to the extent of causing them to lose the election. Corporate elections will not be set aside for trivial irregularities which it appears have not affected the result. 19 C.J.S., Corporations, § 720a, page 41.

The trial court set aside the election upon the ground that the holders of proxies should have been permitted to vote. He was in error in so holding because the by-laws had been amended to abolish proxy voting and the amendment was in effect at the time of the annual meeting on June 3, 1954. The annual meeting was regularly noticed, properly convened, and legally conducted. The result was correctly canvassed and declared by the election committee and should have been sustained and confirmed by the district court. The judgment appealed from is reversed and the proceedings remanded for entry of judgment conformable to this opinion.

BURKE, C. J., and SATHRE, JOHNSON and GRIMSON, JJ., concur.